**STEERE TANK LINES, INC.,**
**Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-**
**SION and United States of**
**America, Respondents.**

**Nos. 82–4175, 83–4086, 83–4212**
**and 83–4322.**

United States Court of Appeals,
Fifth Circuit.

July 23, 1984.

Hugh T. Matthews, Dallas, Tex., for petitioner.

William French Smith, Atty. Gen., Stephen F. Ross, Robert B. Nicholson, Dept. of Justice, John H. Broadley, Gen. Counsel, Robert J. Grady, I.C.C., Washington, D.C., for respondents.

Nelson J. Cooney, Gen. Counsel, Kenneth E. Siegel, Washington, D.C., for Am. Trucking Assoc.

Before GOLDBERG, RUBIN, and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Interstate Commerce Commission requires applicants for certificates as motor common carriers of specific commodities to accept authority to transport such commodities in bulk, whether or not the carrier has demonstrated fitness to do so, has equipment suitable for such transportation, or is willing to accept it, on the basis that a grant with a restriction against carriage in bulk would be unduly restrictive, contrary to the mandate of the Motor Carrier Act of 1980. A carrier who opposed the grant of bulk authority to another carrier argues

that the Commission has acted without a showing that the applicant is either fit or willing to transport such commodities in bulk, in violation of the Act's requirement that every applicant be "fit, willing, and able to provide the transportation to be authorized by the certificate"[1] as construed by this court in *American Trucking Associations, Inc. v. ICC.*[2] We conclude that the statute requires the Commission to consider the fitness and willingness of the applicant, and that, in these cases, the Commission's insistence upon conferring the broader authority was improper.

### I.

In two separate applications, C.D.B. sought authority to transport (1) food and related products and chemical and petroleum products;[3] and (2) chemical and petroleum products, plastic and rubber products, and paper and related products.[4] The first application was unqualified; the second excepted transportation in bulk. Steere Tank Lines, a bulk commodities carrier, appeared in both proceedings to argue that any grants to C.D.B. should exclude transportation in bulk. C.D.B. operates a fleet of more than 100 trucks, all van-type. C.D.B. represented that it does not now render and does not intend in the future to render bulk service. It stated that it would not contest the insertion of a restriction against bulk carriage in the first application and in fact, after Steere objected, requested the ICC to insert such a restriction. C.D.B. also stated that it would accept the issuance of a certificate containing a restriction in accordance with its application in the second.

In the first proceeding, the Commission declined to insert the restriction in either certificate stating, "It is contrary to Commission policy to exclude bulk commodities from specified commodity authorization." In a maneuver that smacks more of gamesmanship than compliance with the statutory mandate, the Commission sought to satisfy the statutory requirement of willingness by giving C.D.B. thirty days either to accept or to reject the unlimited authorization in total. In the second proceeding, the Commission deleted the bulk restrictions from C.D.B.'s request and published the commodity description in the Federal Register notice without it. After an administrative appeal, the Commission failed to reach a majority decision and, in accordance with its Review Board's decision, issued an unrestricted certificate.

### II.

To obtain authority to operate as a motor common carrier, an applicant must be "fit, willing, and able" to provide the service proposed. 49 U.S.C. § 10922(b)(1)(A) (Supp. V 1981). In addition, the transportation must "serve a useful public purpose, responsive to a public demand or need." *Id.* at § 10922(b)(1)(B). These are not only requirements exacted of the applicant; they also are limitations on the Commission. The demonstration of fitness is no less essential when the service to be rendered is bulk transportation.[5] "Public need for the bulk service must also be

---

**1.** 49 U.S.C. § 10922(b)(1)(A).

**2.** 659 F.2d 452 (5th Cir.1981), enforced by mandamus, 669 F.2d 957 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

**3.** Proceeding Sub. No. 34.

**4.** Proceeding Sub. No. 48.

**5.** *American Trucking Associations, Inc. v. ICC,* 659 F.2d at 465.
Commodities are transported in "bulk" if they are transported in a form that is flowable, fungible, and homogeneous, and if they are restrained during transportation only by the confines of the transporting vehicle. *See John J. Mulqueen Contract Carrier Application,* 250 I.C.C. 436, 439 (1942). Commodities such as sand, coal, chemicals and petroleum products are often transported in dump trucks or tank trucks, thus being transported in bulk. However, the same products may be packaged in bags or cans, in which case they would move in nonbulk form.
*Port Norris Express Co., Inc. v. ICC,* 728 F.2d 543, 544 n. 1 (D.C.Cir.1984).

shown."[6] These findings must be supported by substantial evidence on the record as a whole;[7] and the agency's determinations will be reversed if arbitrary, capricious, or otherwise not in accordance with law.[8]

The Act charges the Commission to "reasonably broaden the categories of property authorized by the carrier's certificate or permit." 49 U.S.C.A. § 10922(i)(1)(B)(i) (West Pamphlet 1983). The Commission is reasonable in reading this provision to imply that the evidence of public need to extend a carrier's authority to embrace additional categories of property need not be as substantial as that deemed requisite for the initial category of property. And, as the District of Columbia Circuit held in *Port Norris Express Company v. I.C.C.*,[9] the same implication of congressional intent supports a like relaxation when authority is extended from a specified commodity in packages to the same commodity in bulk.

In either event, however, fitness must be demonstrated. That a carrier is fit to transport petroleum products does not per se prove its fitness to transport food products. Fitness to carry petroleum products in containers does not alone demonstrate fitness to transport diesel fuel in bulk: Different equipment may be required; different cleaning facilities may be needed; and handling methods, safety regulations, and insurance requirements may vary. Demonstrated fitness and willingness to carry commodities in containers does not alone supply evidence representative of fitness and willingness to transport them in bulk.

In *American Trucking Associations*, therefore, we rejected the Commission's decision to eliminate all bulk restrictions from authorities to transport general commodi-

ties. We later noted that an applicant may demonstrate fitness even though it does not have bulk hauling equipment at the time bulk authority is granted, if it is "willing and has the financial resources to obtain the equipment." *Steere Tank Lines, Inv. v. ICC*, 675 F.2d 103, 104 n. 2 (5th Cir.1982). Our analysis was adopted by the Third Circuit in *Port Norris I*, and in *Port Norris III*.[10]

The Commission argues, as it did in *Port Norris III*, that the general commodities-in-bulk rule of *American Trucking Associations* and *Port Norris I* should not be applied to authorities for specific commodities. Differences in equipment, cleaning, safety, and insurance are not so great when specific commodities are involved and the sole issue relates to the transportation of that commodity in containers as compared to its transportation in bulk, it argues. The Commission acknowledges, however, that bulk hauling of some commodities may occasion special concern.

The Commission's key argument is that an unencumbered grant promotes the public interest because the Act was designed to "remove unnecessary regulation by the Federal Government." The argument carries its own rebuttal: Congress did not deregulate the industry completely. It relaxed certain requirements but it retained substantial regulatory control including the paramount ones: no common carrier may operate without a certificate and no certificate shall be issued unless the Commission finds the carrier fit, willing, and able.[11] We, therefore, conclude that the *American Trucking Associations* analysis is applicable to grants of bulk authority for specific as well as general commodities.

---

6. *Port Norris Express Co.*, 728 F.2d at 545.

7. 5 U.S.C. § 706(2)(E). See *Bowman Transportation, Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974).

8. 5 U.S.C. § 706(2)(A).

9. 728 F.2d 543, 545 (D.C.Cir.1984).

10. *Port Norris Express Co., Inc. v. ICC*, 687 F.2d 803, 808–13 (3d Cir.1982) (*Port Norris I*); *Port Norris Express Co., Inc. v. ICC*, 729 F.2d 204, 207–08 (3d Cir.1984) (*Port Norris III*). See also *Port Norris Express Co., Inc. v. ICC*, 697 F.2d 497 (3d Cir.1982) (*Port Norris II*).

11. *Port Norris I*, 689 F.2d at 806.

The Commission urges that, because the Act forbids it to "prescribe a condition preventing ... a motor common carrier ... from adding to its equipment and facilities or its transportation *within the scope of the certificate* to satisfy business development and public demand," [12] it must insist upon bulk authority. This begs the question: the equipment or transportation "within the scope of the certificate" depend on the scope of the certificate. It is equally ingenuous to state, as the Commission did, that, before passage of the Act, it was never required to accept operating restrictions agreed to and proposed by the parties. The Commission is still not required to yield to the whim or manipulation of carriers. It does, however, have a duty to determine whether an applicant has met the statutory requirements. And administrative presumptions or coercion cannot vitiate the standard of "willingness."

The Commission further contends that, because it has authority to require applicants to accept a degree of breadth in the commodities to be transported and the geographic area to be served, it also has authority to require applicants who seek to carry commodities to accept authority to carry them in bulk, citing our *American Trucking Associations* decision. We reject this contention. Our opinion did not approve abandonment of the tripartite standard. Indeed, we held that the guidelines adopted by the ICC must be applied in a reasonably flexible manner to accommodate that standard.[13] Moreover, the elimination of unreasonably restrictive geographic limits and commodities specifications for the same kind of service differ from the requirement that an applicant render two different kinds of service. Bulk transport, as we have mentioned, may involve different kinds of equipment, expertise, and facilities, rather than varying degrees of the same kind of service.

Like the Third Circuit in *Port Norris III,* we leave to the Commission the determination of the amount of evidence required to show fitness to haul specific commodities in bulk. The quantum may indeed vary dependent on the nature of the commodities and other factors. And, again like the Third Circuit, we do not reach out to determine whether the Commission may formulate rules governing the quantum of evidence or whether the nature of some commodities makes fitness to transport them in containers demonstrate fitness to carry the same commodities in bulk. As the Commission has noted, technological developments have narrowed the traditional differences between transportation in bulk and non-bulk.

These technological developments do not, however, affect all kinds of commodities alike. Some commodities may doubtless be transported in bulk by non-bulk trucks using large collapsible and stackable plastic containers. Such factors may properly be considered in determining a carrier's ability to render bulk service. We hold only that the Commission improperly failed to include a bulk hauling restriction in the authority now before us on the basis of the record presented to the Commission.

For these reasons, we REMAND each of these proceedings to the Commission with instructions to revise the certificates in question so as to exclude from each authority to transport the commodities in bulk or, in lieu thereof, to conduct such further proceedings as may be consistent with this opinion.

---

**12.** 49 U.S.C. § 10922(g)(3)(A). [Emphasis supplied.]

**13.** 659 F.2d at 464–65.