**PORT NORRIS EXPRESS CO., INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

**No. 83–1812.**

United States Court of Appeals,
District of Columbia Circuit.

Argued 27 March 1984.

Decided 19 Oct. 1984.

Dissenting Opinion 23 Oct. 1984.

MacKinnon, Senior Circuit Judge, dissented and filed opinion.

William P. Jackson, Jr., Arlington, Va., with whom David C. Reeves, Arlington, Va., was on the brief, for petitioner.

Charles A. Stark, Atty. I.C.C., Washington, D.C., with whom John Broadley, General Counsel, Ellen D. Hanson, Associate General Counsel, I.C.C., Robert B. Nicholson and Andrea Limmer, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Before WILKEY and GINSBURG, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting opinion by Senior Circuit Judge MacKINNON.

WILKEY, Circuit Judge:

Port Norris Express Co., Inc., petitions this court to vacate an order of the Interstate Commerce Commission (the "Commission") granting motor common carrier authority to D–X Trucking, Inc. Port Norris's objection to the order focuses on the fact that D–X was given authority to transport a certain class of commodities (clay, concrete, glass, or stone) in bulk form, without any evidentiary showing by D–X of a public demand or need for such an authority. For reasons discussed below, we remand the Commission's order which grants D–X bulk authority, with directions to impose a bulk restriction.

I. BACKGROUND

D–X filed an application with the Commission in January 1983. In its application, D–X requested authority to transport clay, concrete, glass, or stone products nationwide in both bulk and nonbulk forms.[1] D–X supported its application with verified statements from three shippers who intended to use D–X to ship their products nationwide. These supporting shippers expressed a need for D–X's service in nonbulk form, but the Commission concedes that none expressed any need for the transportation of their products in bulk form.[2] In fact, one of the shippers (LOF Glass) expressly disclaimed any need for bulk transportation service.[3]

In its application D–X explained that it would provide the proposed service with its 20 tractors and 39 trailers, including 45-foot, high volume vans, 2 specially designed A-frame trailers, drop-deck trailers, flatbeds, and open-top trailers.[4] However, D–X did not own any bulk transportation equipment.[5]

Port Norris, a common carrier specializing in bulk transportation, filed an objection to D–X's application. The basis for Port Norris's objection was that D–X had failed to show that the proposed service

1. Appendix for Petitioner at 1–29. Commodities are transported in "bulk" if they are in a form which is flowable, fungible, and homogeneous, and if they are restrained during transportation only by the walls of the transporting vehicle. *John J. Mulqueen Contract Carrier Application,* 250 I.C.C. 436, 439 (1942). Bulk hauling of certain commodities may require special expertise.

2. Brief for Respondents at 5–6.

3. *Id.* at 6 n. 7.

4. Brief for Petitioner at 6.

5. *Id.*

would respond to a "public demand or need," as required by applicable law.[6] D–X filed a reply statement arguing against any restriction in the proposed authority against bulk transportation, indicating that its failure to exclude commodities in bulk from its application was influenced by the Commission's policy of refusing to allow bulk restrictions in grants of authority to transport specific commodities.[7]

In April 1983 the Commission, Review Board 1,[8] decided to grant the application without imposing any restriction on bulk transportation.[9] In June 1983 the Commission, Division 2, affirmed the Review Board's decision and issued D–X a license which contained no restriction on bulk transportation. Port Norris petitioned this court for review.

## II. ANALYSIS

■ The scope of our review of the Commission's order is defined in this case by the Motor Carrier Act of 1980[10] and the Administrative Procedure Act. Under the Motor Carrier Act, the burden is on the applicant to show that there is a public demand or need for the requested service, in order to qualify for an authority to transport that type of commodity. If the applicant does not produce evidence which satisfies that burden, the Commission is not authorized to issue a license covering that type of commodity. Under the Administrative Procedure Act, the decision to grant the authority may not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and must be supported "by substantial evidence."[11]

■ The leading case applying these requirements to authorizations for general bulk hauling is *American Trucking Association, Inc. v. ICC*.[12] That case involved a challenge to a Commission order similar to the present case, except that the Commission had refused to impose bulk restrictions in authorities to transport *general* commodities, as opposed to specific classes of commodities. The Fifth Circuit's analysis in *American Trucking Association* was adopted by the Third Circuit in *Port Norris Express Co. v. ICC*[13] [*Port Norris-Dennis*]. Both of these courts held that the Commission must base issuance of an authorization for general bulk hauling upon record evidence of public demand or need for bulk hauling, and could not rely on policy grounds.[14]

The Commission had argued that *American Trucking* and *Port Norris-Dennis* were not directly applicable to the present case, since the present case deals with authorization to haul a *specific* class of commodities.[15] Subsequent to the original briefs on this appeal, however, several cases have been decided which extend the holding of *Port Norris-Dennis* to cover applications for authority to haul specific commodities. In *Port Norris Express Co. v. ICC*[16] [*Port Norris-Allen*] Allen Truck and Trailer Leasing, Inc. had requested authority to haul clay, concrete, glass, or stone products. Neither Allen nor any of the supporting shippers mentioned bulk hauling.[17] The court in *Port Norris-Allen* did not specifically decide "the exact quantum of evidence required to support the grant of an authority to haul specific com-

6. 49 U.S.C. § 10922(b)(1) (1982).

7. Appendix for Petitioner at 65.

8. Review Board 1 is a panel of three Commission employees delegated initial decisionmaking authority pursuant to 49 U.S.C. § 10305(a) (1982).

9. Appendix for Petitioner at 68–70.

10. Pub.L. No. 96–296, 94 Stat. 793.

11. 5 U.S.C. § 706(2)(A), (E) (1982).

12. 659 F.2d 452 (5th Cir.1981), *enforced by mandamus*, 669 F.2d 957 (5th Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

13. 687 F.2d 803 (3d Cir.1982).

14. *Id.* at 809–11, 813.

15. Brief for Respondents at 19–21.

16. 729 F.2d 204 (3d Cir.1984).

17. *Id.* at 207.

modities in bulk," [18] requiring only that the certificates be supported by substantial evidence. But the court did indicate what would *not* be acceptable. It rejected the Commission's argument based on the "rule of representative evidence," an argument also advanced by the Commission in the present case.[19] The "rule of representative evidence" argument is that from specific evidence of a need for nonbulk hauling, the Commission can rationally infer a need for bulk hauling of the same commodities. Through this inference, the Commission argues that the statutory requirement of a "public demand or need" is satisfied.[20]

The "rule of representative evidence" was originally applied in the context of geographical limitations.[21] For example, grants of statewide authority have never needed supporting evidence from every municipality in the state. Similarly, specific evidence of public need for certain commodities within a broad class can support an authority for the entire class of commodities. However, the Third Circuit in *Port Norris-Allen* rejected the use of the representative evidence inference when it is used to infer the need for bulk service solely from evidence of need for nonbulk service.[22]

We also reject the use of an evidentiary inference to satisfy the clear requirements of the statute. Section 10922(b)(1) requires that the *applicant* put forth evidence of a public demand or need for the authorization sought. The requirement is not satisfied by an inference, when the inference is not supported by any direct evidence. Contrary to the assertions of the Commission, it is not "perfectly rational" [23] to infer the need for bulk hauling when there was absolutely no evidence presented of any such need, and when in fact one shipper disclaimed any need for bulk hauling. It is one thing to infer the need for statewide shipping from evidence of a need to ship to several cities in the state. It is quite another to infer the need for bulk shipping without a shred of direct evidence of any such need.[24] The need for nonbulk service

18. *Id.* at 208.

19. Brief for Respondents at 16–18.

20. *Id.*

21. *See Acceptable Forms of Requests for Operating Authority* (Motor Carriers and Brokers of Property), 364 I.C.C. 432 (1980), *aff'd in part sub nom. American Trucking Ass'n, Inc. v. ICC,* 659 F.2d 452 (5th Cir.1981), *enforced by mandamus,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

22. 729 F.2d at 209. The dissent believes that both Port Norris and the Third Circuit have confused the "public need" and "fitness" issues. The dissent finds this confusion because Port Norris has consistently buttressed its argument against the Commission's representative evidence rule with evidence that bulk transportation differs significantly from nonbulk transportation, and that the applicant does not have the equipment to handle bulk transportation. In this case, it is the dissent that is confused. Port Norris, by its own admission, is not contesting the applicant's fitness. It is attacking the rationality of the representative evidence rule. The Commission argues that if evidence of the need for nonbulk service is presented, that can rationally support an inference of a need for bulk shipments. Port Norris's argument is that bulk

and nonbulk shipping are so fundamentally different that such an inference is not reasonable. Thus, the fact that a nonbulk shipper does not even have the necessary equipment to haul in bulk is presented to rebut the reasonableness of the Commission's inference, not to contest the applicant's fitness.

23. Brief for Respondents at 18.

24. In fact, the Commission may be engaging in a double inference. First it employs the now-accepted inference that evidence of a need to ship a certain commodity—in the present case, mostly plate glass—supports the inference of a need to ship an entire related class of commodities—clay, concrete, stone, or glass. Having already made one inference, the Commission then explains that "[a]fter all, it is beyond dispute that the commodities at issue normally move in bulk." Brief for Respondent at 9. The Commission first infers the need to ship an entire class of commodities from direct evidence of a need for only some members of that class. It then infers the need for bulk shipments without any direct evidence, because some other members of the inferred class of commodities normally move in bulk.

The dissent argues that the Commission actually "had before it evidence that two shippers needed bulk service." That statement is not and cannot be supported by reference to any ship-

does not create any inference of the need for bulk service; the two may be, and apparently are here, unrelated. Some direct evidence on bulk service is required.

Our holding in *Port Norris Express Co. v. ICC*,[25] [*Port Norris-Fiorot*] is not to the contrary. In *Port Norris-Fiorot* there was direct evidence by one supporting shipper of a need for shipment of building materials in bulk. There was no challenge to the grant of authority for nonbulk shipments. Deferring to agency expertise, this court found that a grant of authority for "nationwide bulk general commodities authority on the basis of a single-shipper showing, when that authority is sought *in conjunction with* nationwide nonbulk general commodities authority supported by a multi-shipper, multi-commodity representative sampling"[26] satisfied the statutory requirements.

The line between an inference based on *one* shipper's evidence of need, and an inference based on *no* evidence at all of need, is a thin one. But it is a valid distinction and we make it, because it is the minimum distinction required by the terms of section 10922(b)(1).

We are aware of the fact that the Commission bases its policy (of not imposing bulk restrictions unless a protestant can rebut the Commission's inference of need) on what it perceives is the general congressional intent manifested in the Motor Carrier Act of 1980.[27] Whatever Congress's general intent may have been with the passage of the Motor Carrier Act, Congress also has manifested its specific intent in section 10922(b)(1), which continues to require that the *applicant* produce affirmative evidence of a public need for the authority sought. The Commission's policy impermissibly reverses this burden of proof by granting bulk hauling authority *unless* a protestant can muster evidence that "defeat[s] the inference of representativeness."[28] However well intentioned, the Commission's policy is contrary to the demands of the statute.

In agreeing with the reasoning of the Third Circuit in *Port Norris-Allen*, we would also note that two other circuits have adopted substantially the same reasoning. In *Steere Tank Lines, Inc. v. ICC*[29] and in *Erickson Transport Corp. v. ICC*,[30] the Fifth and Eighth Circuits, respectively, remanded Commission orders to require restrictions on bulk hauling. Although both of those cases focused on the fitness prong of section 10922(b)(1), the foundation of those opinions also rests on the impermissibility of the Commission's policy of authorizing bulk haulage with only inferential, "representative" evidence. Our decision today, although based on the reasoning set out above, also prevents an unnecessary split in the circuits on the meaning of a statute and the authority of a regulatory agency. If the various circuits have misapprehended what appears to be the plain meaning of section 10922(b)(1), then Congress can easily correct the error. Until such time, it seems very little to ask that an applicant present some bare minimum of direct evidence of a need for the grant of authority to haul in bulk.

---

per's testimony. Neither will it do to say that the Commission only lacked "explicit indications of need." The fact is that the Commission had neither explicit nor implicit evidence of need. *No* shipper expressed any need for bulk hauling; one shipper *disclaimed* any such need. No other evidence of need was presented. As for implicit evidence, D–X stated that it could satisfy all its clients' needs with its present equipment, which does not include any equipment for bulk haulage.

**25.** 728 F.2d 543 (D.C.Cir.1984).

**26.** *Id.* at 545 (emphasis in original).

**27.** *See* 49 U.S.C. § 10101 (1982). The Commission defends its policy in Brief for Respondents at 22–28. The United States neither supported nor opposed the argument raised in that portion of respondents' brief.

**28.** Brief for Respondents at 21 n. 19.

**29.** 736 F.2d 1094 (5th Cir.1984).

**30.** 737 F.2d 775 (8th Cir.1984).

For these reasons, we remand this proceeding to the Commission with instructions to revise the certificate in question so as to exclude the authority to transport clay, concrete, glass, or stone in bulk, or to conduct such further proceedings as may be consistent with this opinion.

*So ordered.*

MacKINNON, Senior Circuit Judge (dissenting):

This case is nearly identical to *Port Norris Express Company v. ICC*, 728 F.2d 543 (D.C.Cir.1984) ("*Port Norris I*"), involving the same petitioner in its crusade to block bulk commodity authorizations by the ICC. Port Norris Express Co. (Port Norris) petitions for review of the Commission's grant of authority to D–X Trucking, Inc. (D–X) to carry clay, concrete, glass, and stone nationwide—without a restriction against the carriage of these commodities in bulk form. In my opinion, the petition should be *denied*, because the applicant must be considered to have made an adequate showing of public need.

D–X filed an application to transport the above-stated commodities on January 20, 1983, and Port Norris opposed. On June 21, 1983, the ICC's appellate Division 2 affirmed in all respects the decision of the Review Board to grant the application in its entirety (JA 68, 94). D–X had supported its application with the verified statements of three shippers, all makers of glass products (JA 5–16). Collectively the shippers expressed the need for transport of *clay, concrete, glass,* and *stone products* nationwide. None directly expressed a need for bulk transportation of the products, and one disclaimed that need (JA 10). In reply to Port Norris' opposition, D–X conceded that it did not currently own any bulk transportation equipment (JA 61), though it had earlier stated that it could obtain additional units through a leasing affiliate (JA 21).

*The sole question presented is whether D–X's shipper evidence constituted an adequate showing of public need to support a grant of authority to carry both in non-bulk and bulk form.* Port Norris *did not contest on fitness* before the ICC, and cannot do so now. What the case comes down to then is whether the Commission, employing its expertise and experience, was within its authority to recognize that the commodities in question *normally move in bulk,* with only glass somewhat less so. If so, then the shipper evidence was adequately representative of public need. A restriction against bulk carriage is nonsensical.

In last month's case, *Port Norris I,* Judge Scalia's opinion for the panel held that when the ICC confers nationwide non-bulk general commodities authority, it may add on bulk authority on the basis of a *single* bulk shipper's need. That only a few specific commodities are involved here makes no difference concerning the bulk/non-bulk distinction. In this case the ICC had before it evidence that *two* shippers needed bulk service—assuming that the Commission could legitimately recognize that the commodities in question generally move in bulk. In my opinion, that was a reasonable inference within the ICC's range of expertise and experience, and supported by its past practice and precedents. This inference does not confuse bulk and non-bulk commodities, even if Port Norris has persuaded the majority to adopt that mistaken view. The Commission makes the inference *from* the need for service to move a certain commodity *to* the need for bulk service, where that commodity generally moves in bulk. This use of representative evidence, far from being irrational, merely allows the Commission not to ignore the obvious. The absence of explicit indications of need for bulk carriage in the shipper evidence was not controlling. To send this case back to the Commission on the basis of that sort of omission is picayune.

The main thrust of Port Norris' argument here is that bulk transportation of the commodities in question often differs significantly from non-bulk transportation, in that different equipment is required, and that D–X never demonstrated that it had

the equipment to handle bulk transportation of these commodities. *See* Brief for Petitioner at 11, 14, 15. But as we recognized last month, that is a *fitness* issue, and it was *not* raised as such in this case before the Commission. *See Port Norris*, at 545. Petitioner also points to a case in the Third Circuit that appears to confuse the public need and the fitness issues concerning bulk authority. *See Port Norris Express Co. v. ICC*, 729 F.2d 204 at 207 (3rd Cir.1984) (reproduced in Petitioner's Supplemental Brief, Appendix A). This panel, however, is not obliged to reproduce the Third Circuit's errors, and is indeed bound to follow Judge Scalia's opinion in *Port Norris I.*

Petitioner's only other contention of any weight is that the ICC merely applied a *policy* against carrying out exceptions for bulk authority—an approach that would admittedly be impermissible. *See Port Norris*, at 545. That objection, however, is without merit where the Commission had before it evidence sufficient to support a *factual* inference of public need for bulk carriage. That was the case here. Since Port Norris cannot point to any persuasive distinction between this case and the one it brought before this court last month, this petition should be denied. I dissent for the above stated reasons.